No. 36,301

In re Application of W. E. Maxwell for a Writ of Habeas Corpus (W. E. MAXWELL, *Petitioner,* v. R. H. HUDSPETH, Warden, *Respondent*).

(164 P. 2d 134)

Opinion filed December 8, 1945.

W. E. Maxwell *pro se.*

A. B. Mitchell, attorney general, and Leon W. Lundblade, assistant attorney general, were on the briefs for the respondent.

The opinion of the court was delivered by

HOCH, J.: This is an original proceedings in habeas corpus. The petitioner, W. E. Maxwell, was convicted in Lyon county of murder in the first degree, and on November 29, 1939, was sentenced to life imprisonment in the state penitentiary, where he has since been confined.

Before considering the contentions made it is pertinent to narrate

briefly the history of the proceeding. The petitioner having filed various letters and papers in which it was alleged that he was unlawfully restrained of his liberty and that he was unable to employ counsel this court, on July 3, 1944, appointed Mr. J. Willard Haynes of Kansas City, Kan., an experienced attorney and a member in good standing of the Wyandotte county bar, to represent him and all papers in the case were made available for his examination. On August 14, 1944, Mr. Haynes addressed a letter to this court, which was made a part of the files, in which he reviewed the facts disclosed by the records—to which further reference will presently be made—and stated that after examining the record and discussing the matter at a conference with the petitioner he was of the opinion that no valid grounds for granting a writ existed and so advised the petitioner. Thereafter an order was issued permitting the filing of the papers prepared by the petitioner without deposit for costs, and the respondent, warden of the penitentiary, was given twenty days in which to plead. The respondent filed a motion to make definite and certain which was allowed and the petitioner then filed another petition together with another motion for appointment of counsel. Answer was made by the respondent and the case set for hearing on January 25, 1945. The petitioner filed a brief in his own name and the case was duly submitted. On February 22, 1945, the petitioner was advised that upon examination of the various papers filed by him the issues did not appear to be clearly presented and that Mr. John E. Addington of the Shawnee county bar had been appointed to represent him and had been asked "to examine the files and after conference with him to prepare, if possible, an amended petition setting out the matters complained of in an issuable form, giving names of parties and time and circumstances as fully as possible, and to take such further action on behalf of petitioner as may be necessary or proper to fully represent him in the above matter." Like the attorney previously appointed, Mr. Addington is an experienced attorney of high standing. Further consideration of the case was held in abeyance in order to afford the petitioner further opportunity clearly to present his complaints. On September 13, 1945, Mr. Addington filed his affidavit in the case in which he recited that following his appointment as counsel he went to the state penitentiary, accompanied by his law partner, Mr. Howard A. Jones, where they had a private conference with the petitioner and went over the entire case with him from the time of his arrest until his

confinement in the penitentiary; that thereafter he prepared an amended petition and on April 20, 1945, mailed it to the petitioner with the request that he sign the verification and return it to him as soon as possible; that not having heard further from the petitioner he wrote him on May 10, 1945, asking why he had not returned the amended petition but received no reply; that he then wrote to the warden asking that the petitioner be interviewed about the matter, and after doing so the warden replied that the petitioner stated he was not ready to reply and wanted more time. The affidavit recites further that affiant had received no further communication from the petitioner; that the petitioner apparently did not care to coöperate with him and there did not appear to be anything more he could do for him. Other statements in the affidavit as to the petitioner's attitude and mental state correspond to statements made by Mr. Haynes, the counsel first appointed, and need not be set out here. No amended petition has been received.

In view of the facts above stated dismissal of the petition would have been and would now be amply justified. However, the case was again set down for hearing and upon request of petitioner for early determination the date was advanced to November 5, 1945. No further representations involving the merits were made by the petitioner.

The petitioner makes some contentions as to matters which are not reviewable in a habeas corpus proceeding. For instance, he contends that if the question were submitted to a ballistic expert it would be shown that the bullet which caused the death of the man of whose murder he was convicted was not fired from any gun owned or used by him. His counsel, Mr. Everett Steerman, says in his affidavit that the defendant at no time contended that the fatal shot was not fired from his gun. From the many letters and other papers filed by the petitioner we have attempted to sift out such contentions as can be here considered. In a letter to his attorney, Mr. J. Willard Haynes, dated September 6, 1944, the petitioner asked that a petition for a writ be drawn up embodying three charges—"denial of counsel, denial of material witnesses, illegally changing the trial date," and "any other denial or error you locate." In drawing up his amended petition, however, he added the additional charges that he was not "legally charged in the information with murder in the first degree"; that county officials defrauded him of his rights by giving him drugs and by "abuse, coercion, duress and threats"; and

that he was not allowed to file a motion for a new trial nor to take an appeal to this court.

The contention that petitioner was denied counsel of his own choosing is abundantly disproved by the record. In the memorandum of proceedings had before the justice of the peace in the preliminary hearing—copy of which petitioner attaches to his amended petition— it appears that the petitioner, when asked if he had employed any attorney, replied that he had talked to an attorney but had not employed any and did not want any local attorney, and that upon being asked if he waived counsel for the preliminary hearing did not answer "yes" or "no" but said "go ahead." It is clear that in the district court great care was taken by the trial court to see that the defendant was adequately represented by counsel. The defendant stated that he had not employed counsel but had talked to Mr. Shaw, an attorney "in the north part of the state." The court went over one by one the names of the members of the Lyon county bar, making inquiry of the defendant as to each of them. From the transcript of the proceedings we take the following excerpts:

"Judge Rolston: . . . Under our constitutional law, you are entitled to a trial by jury; you are entitled to be represented by counsel. If you do not have counsel and are unable to employ counsel to represent you, the court can appoint not to exceed two. Of course, I would comply with the wishes of the defendant and appoint the attorney you want appointed. If you can tell me some member of the bar you want the court to appoint—I shall do so. Apparently from what you say you don't want Mr. Samuel. Is there anyone else you want the court to appoint to represent you?

"Mr. Maxwell: I don't know. I am not very well acquainted. Could I represent myself?

"The Court: You will have to have a lawyer when we go to trial in this case. You certainly can not present your own case. You are not familiar with the rules or procedure or the rules of evidence and you would not be properly protected and that is the reason that the law provides that the court can appoint not to exceed two atorneys. Have you any finances so that you can obtain counsel to represent you—that is pay an attorney?

"(No answer.)

"The Court: Do you have anybody in mind that you want the court to appoint. I am going to appoint two anyway. If you are going to trial sometime this month you have to have a lawyer from time to time to check upon things and consult with you and see that your rights are preserved.

. . . . . . . . . . . . . .

"The Court: Now, you have heard the names I have read to you—now who do you wish me to appoint as your counsel, provided you have made no arrangement with any other attorney—and as I understand you have not?

"Mr. Maxwell: No, I haven't.

"The Court: Do you have any preference?

"Mr. Maxwell: The only ones I would have would be Harris and Steerman.

"The Court: You want Everett Steerman and Mr. Harris—is that the way I understand you?

"Mr. Maxwell: They are all right with me.

"The Court: I want you entirely satisfied.

"Mr. Maxwell: They are all right with me.

"The Court: If you have funds and wish to employ counsel you may still do so.

"Mr. Maxwell: They are all right.

"The Court: You understand the officers will get in touch with any attorney you desire and have them consult with you—if you wish to get in touch with Mr. Shaw—I am sure the sheriff will see to it that you are given the opportunity of talking to him.

"Mr. Maxwell: Mr. Harris and Mr. Steerman are all right.

"The Court: I will appoint Judge W. C. Harris and E. E. Steerman, members of the bar, to represent you in this case, and I will have them come over and see you and talk with you and make plans with reference to the trial of this case. They will be notified immediately. Is there anything you want to ask me about?

"Mr. Maxwell: I guess not. Thanks."

It may be added that both Judge Harris, since deceased, and Mr. Steerman were leading members of the bar. The former had been judge of the district court and the latter had been an assistant attorney general. Both attorneys actively participated in the conduct of the case.

Petitioner's contention that he was denied the right to subpoena witnesses is likewise groundless. The record of the preliminary hearing discloses that the defendant cross-examined witnesses for the state and that when the state rested the defendant was asked if he had any witnesses and replied that he wanted Mrs. Faye Davis, widow of the man whom he was accused of having killed, to take the stand. She did so and he asked her a number of questions. At the trial in the district court more than a dozen witnesses were subpoenaed at his request. There is on file here an affidavit by Hon. Joe Rolston, Jr., who was then judge of the district court of the Fifth Kansas Judicial District, of which Lyon county is a part, and who presided at the trial, in which essential facts with reference to the trial are related in detail. It is unnecessary to set out the affidavit in full. As to defendant's witnesses Judge Rolston said: "All witnesses requested by the defendant were duly subpoenaed, and affiant does not recall that any

witness requested by the defendant was unable to appear or testify or that defendant or his counsel did not have adequate time to prepare for trial."

There is also on file here a sworn statement by Mr. Steerman, counsel for petitioner, which might well be incorporated in full. In view of its length we set out at this point only that part referring to defendant's witnesses. Mr. Steerman says in his affidavit:

"At the trial a number of character witnesses were called and testified for and on behalf of the defendant and the defendant did take the witness stand and did testify.as to the difficulty which he had with the said Faye Davis which provoked the altercation out of which the said Faye Davis was killed by a shot fired from a gun held in the hand of the said Maxwell.

"Affiant further states that every person whose name was called to the attention of the Honorable W. C. Harris and this affiant and all persons in the neighborhood who might have known anything about the controversy between Maxwell and Davis and out of which the said Davis was killed, and every person who might have been a witness for the defense of Maxwell, were interviewed and that the only witnesses that could be produced were character witnesses and a number of them did testify for and on behalf of the defendant as the record in said case fully discloses. . . .

"Affiant states that the Honorable W. C. Harris and this affiant had ample time to and did interview all of the witnesses whose names were furnished by the said Maxwell and did interview a great number of others that the said Maxwell did not name in an effort to get evidence to establish facts which would justify the jury in rendering a verdict of justifiable homicide."

The facts with reference to the setting of the case for trial are that at the close of the preliminary hearing on October 27, 1939, the defendant was bound over for trial at the February, 1940, term of the district court, and was committed to jail to await trial. On November 2, 1939, the county attorney filed the information in the district court with the names of the witnesses to be called by the state endorsed thereon. On the same day the defendant was brought into court and the proceedings relating to appointment of counsel as hereinbefore related took place, and the case was set for trial on November 20, 1939, the same being a regular day of the term of the district court then in session. Such setting was made pursuant to G. S. 1935, 62-1301, which provides:

. "Time of Trial. All indictments and informations shall be tried at the first term at which the defendant appears, unless the same be continued for cause. If the defendant appear or is in custody at the term at which the indictment or information is found, such indictment or information shall be tried at that term, unless continued for cause."

Mr. Rolston, who presided at the trial and Judge Jay Sullivan who was the county attorney who prosecuted the case and who is now the district judge in the Fifth Kansas Judicial District say in affidavits filed here that before setting the case for trial the trial court informed the defendant that the case would be set for sometime the latter part of November unless good cause were shown why that should not be done and that neither the defendant nor his counsel made any objection to going to trial on the date set, or asserted that they did not have adequate time to prepare for trial. Mr. Steerman, in his affidavit, makes a similar statement, saying that the defendant made no request of them that they ask for a continuance and that in his opinion the defendant's rights were in no way prejudiced by reason of the time when the case was set for trial.

There is no merit in the petitioner's contention that a charge of murder was not sufficiently made in the information. It is not necessary to set out the information in full. Clearly and beyond question it charged murder in the first degree as defined in the statute.

Petitioner's contentions that he was given drugs and that county officers by threats, abuse and coercion deprived him of his rights and did not permit him to file a motion for a new trial or to take an appeal are wholly unsupported. Although the petitioner was notified that this court had granted the respondent's motion to require him to make the petition definite and certain with reference to these allegations he has not specified what county officers were guilty of the acts alleged or what the nature of the alleged threats and abuse was or what county officers prevented his filing a motion for a new trial or taking an appeal nor in what way they so prevented him. In his affidavit heretofore referred to, Mr. Rolston, the presiding judge, said:

"Affiant further says that he has no recollection of any evidence of abuse, coercion, duress, or threats being applied against the defendant; that he was accorded the full processes of the court, and the constitutional rights of the defendant were fully and adequately protected to the best ability of affiant, and in every case of doubt it was resolved in favor of the defendant and not against him.

"Affiant further states that while the facts of the case were still fresh in mind, and on the 5th day of December, 1939, he wrote a letter to the Honor-, able Leroy Bradfield, pardon attorney, Governor's Office, Topeka, Kansas, pursuant to the requirements of law, advising such official concerning the trial

of said action, which letter is by reference made a part of this affidavit as if fully and completely here set out at length. Affiant further states that there was no motion for a new trial filed and, as affiant recalls, defendant's counsel advised the court that they knew of no error in the trial of the case and therefore were not filing any motion for a new trial. Affiant further states that he believes the record will disclose, and the letter above referred to does disclose, that at the time the defendant was sentenced he advised affiant that he had had a fair trial."

In his affidavit hereinbefore referred to Judge Sullivan, the then prosecuting attorney says:

"Affiant further says that defendant did not at anytime before, during or after the trial, while being held in the county jail of Lyon county, Kansas, contend that he had been abused, coerced or that any threats had been made against him. Affiant further states there was no motion for new trial filed and defendant's counsel stated they knew of no error in the trial of the case and therefore were not filing a motion for new trial."

We find no grounds for granting the writ and it is hereby denied.